THE EAST ST. LOUIS BOARD OF TRADE

*v.*

THE PEOPLE *ex rel.* Robert S. McCormick.

*Filed at Mt. Vernon January 31, 1883.*

1. INSPECTORS OF GRAIN — *boards of trade of East St. Louis and Chicago — their powers.* By the act of 1867, incorporating the East St. Louis Board of Trade, there were conferred upon that board all the powers and privileges, and it was subjected to all the restrictions, of the Chicago Board of Trade as then existing under its charter of 1859. Section 10, of the charter of the board of trade of Chicago, merely authorizes an inspection of grain by inspectors appointed by the board of trade, among its members, or as to any

other person who may agree thereto; and such inspectors so appointed have no authority to act in any other case, or under other or different circumstances.

2. SAME—*public warehouses—act of 1871 construed as not affecting boards of trade.* The act of 1871, for the regulation of public warehouses, was not intended as an amendment of the charters of boards of trade. That act was intended as a complete system of itself, in no manner connected with or depending upon any other law on the subject. Under it no provision is made for the appointment of inspectors of grain for public warehouses in class "B."

3. SAME—*effect of act not providing for inspectors.* Under the act of 1871, in relation to public warehouses, it making no provision for the appointment of inspectors of grain in class "B," the owners or proprietors of that class of warehouses could conduct their business without inspection, as before the passage of the law. This seeming defect in the act can not be construed to invest boards of trade with the power of appointing such inspectors.

4. Section 19, of the act of 1871, prohibits warehousemen of class "B" from receiving and mixing the grain of different owners until the same shall have been inspected, in all places where there are legally appointed inspectors of grain. Such inspectors are not such as are appointed by a board of trade, but such as might be appointed under power subsequently conferred by law. So inspectors appointed by the board of trade of East St. Louis are not legally appointed under this section.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE W. WALL, Judge, presiding.

Mr. M. MILLARD, for the appellant.

Messrs. BROADHEAD & HUESSLER, Mr. L. H. HITE, Mr. JOHN B. BOWMAN, and Messrs. WILDERMAN & HAMILL, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a proceeding by *quo warranto,* instituted in the St. Clair circuit court, at the September term, 1882. The first count of the information charges, in substance, that appellant, a corporation, etc., on the 20th day of June, 1882, at East St. Louis, in St. Clair county, did unlawfully usurp, and hitherto has continued to and does now unlawfully usurp,

the following liberties, privileges and franchises not conferred upon it by law, viz: the power and exclusive right to appoint and maintain legal inspectors to inspect and establish grades of all grain to be received into warehouses and elevators classed "B" under the law, in the city of East St. Louis, and to charge and collect from the owners, not being members of said corporation, nor requiring or assenting to the employment of such inspectors, fees for such inspection.    To this information appellant pleaded in justification, in substance, that it is a corporation organized and existing under an act of the General Assembly, entitled "An act to incorporate the East St. Louis Board of Trade," approved February 21, 1867, which act conferred upon it all the powers and privileges, and subjected it to all the restrictions, of the Chicago Board of Trade, as then created by an act entitled "An act to incorporate the Chicago Board of Trade," approved February 18, 1859, which appellant claims confers upon it the powers and privileges mentioned in the first count of the information.    To this plea the People interposed a demurrer, which was sustained by the court, and appellant declining to plead further, a judgment of ouster was entered.    From this judgment appellant prosecutes this appeal.

The tenth section of the act to incorporate the Chicago Board of Trade, which is the section relied upon, declares: "Said corporation shall have the power to appoint one or more persons, as they may see fit, to examine, weigh, measure, guage or inspect flour, grain, provisions, liquors, lumber, or any other article of produce or traffic commonly dealt in by the members of said corporation; and the certificate of such person or inspector as to the quality or quantity of any such article, or their brand or mark upon it, or upon any package containing such article, shall be evidence between buyer and seller of the quantity, grade or quality of the same, and shall be binding upon the members of said corporation, or others interested, and requiring or assenting to the employment of

such weighers, measurers, gaugers or inspectors. Nothing herein contained, however, shall compel the employment by any one of any such appointee."

Section 19 of the public act to regulate public warehouses, etc., in force July 1, 1871, (Rev. Stat. 1874, p. 826,) provides : "In all places where there are legally appointed inspectors of grain, no proprietor or manager of a public warehouse of class 'B' shall be permitted to receive any grain, and mix the same with the grain of other owners in the storage thereof, until the same shall have been inspected and graded by such inspector."

Appellant relies upon the two sections above for the exercise of the powers alleged in the plea.

The argument, as we understand it, is, that section 10 of the board of trade charter confers the power to inspect, and section 19 of the Warehouse law supplements that by making its exercise an operative police regulation, regardless of the assent of any one. So far as section 10 of the charter of the board of trade of Chicago is concerned, it is apparent that it did not authorize the exercise of the power set up in the plea, as it is therein expressly declared that the inspection named in the section shall be binding on the members of the corporation, and others interested, and requiring or assenting to the employment of such inspectors,—"nothing herein contained, however, shall compel the employment by any one of any such appointee." This provision merely authorized an inspection by inspectors appointed by the board of trade, among its members, or by any other person who might agree to an inspection by such an officer, but the inspector had no authority whatever to act in any other case or under other or different circumstances.

We now come to the act for the regulation of public warehouses, which, in connection with the charter, it is contended confers the power. The act was passed in 1871, in pursuance of article 13 of the constitution, which had become the

25—105 ILL.

organic law of the State in 1870. The original act was amended on the 28th day of May, 1879. (Laws of 1879, p. 226.) If the original act was intended as an amendment to the charter of the board of trade of East St. Louis, or as supplemental to any provision of that charter, the legislature exhibited great skill in concealing the intention, as no section of the act mentions or in the least alludes to the charter of the board of trade, and we do not believe that the charter of the board of trade was in the mind of the legislature when the law was passed, or that it was enacted with reference to any provision in that charter. The act, as passed, seems to have been intended as a complete system of itself, in no manner connected with or depending upon any other law on the subject. The first section of the act provides that public warehouses, as defined in article 13 of the constitution, shall be divided into three classes,—"A," "B," and "C." The second section declares that class "A" shall embrace all warehouses where grain is stored in bulk, and in which the grain of different owners is mixed together, such warehouses being located in cities having not less than 100,000 inhabitants. Public warehouses known as class "B" shall embrace all other warehouses in which grain is stored in bulk, in which the grain of different owners is mixed together; and public warehouses of class "C" shall embrace all other warehouses where property of any kind is stored for a consideration. Section 14 provides that the Governor shall appoint a suitable person, who shall not be a member of the board of trade, and who shall not be interested in any warehouse in the State, a chief inspector of grain for every city in which is located a warehouse of class "A." This section was amended in 1879 by the passage of an act containing two sections. The first section so amended section 14 that the Governor was empowered to appoint a chief inspector of grain in every city or county in which is located a warehouse of class "B," but no such appointment shall be made except upon the application

and petition of two or more warehousemen doing a separate
and distinct business, residing and doing business in such
city or county, and where there shall be a legally organized
board of trade in such cities or counties, such application
and petition shall be officially indorsed by such board of trade
before such application shall be granted.   The chief inspector
is required to take an oath as other officers, and execute a
bond, conditioned that he will faithfully and strictly discharge
the duties of the office, according to law.   The second section
of the act declares :  "Inasmuch as there now is a large quan-
tity of grain in warehouses of class 'B' which can have no
legal inspection, an emergency exists, therefore this act shall
be in force from and after its passage."

It is true that under the act of 1871 no provision was
made for the appointment of an inspector of grain for public
warehouses in class "B," but this fact does not strengthen
the argument of appellant.   If no appointment was provided
for, and none made, the owners or proprietors of warehouses
of that class could conduct their business without inspection,
as they did before the law of 1871 was passed.   The seeming
defect in the act did not, in our judgment, invest the board
of trade of East St. Louis with the exercise of the important
power of appointing inspectors of grain.   If such had been
the intention, language of a different character would doubt-
less have been employed.   Section 19, of the act of 1871,
prohibits a warehouseman of class "B" from receiving and
mixing the grain of different owners until the same shall
have been inspected, "in all places where there are legally
appointed inspectors of grain."   Who are the legally ap-
pointed inspectors, within the meaning of the legislature, as
declared in section 19 ?   They were not, in our judgment,
inspectors appointed by the board of trade of East St. Louis,
but were such as might be appointed under the law itself, as
amended in 1879.   This is the construction placed upon the
language of section 19 by the legislature, in 1879, as is

apparent from the language of section 2 of the amended act, which declares: "Inasmuch as there is now a large quantity of grain in warehouses of class 'B' which can have no legal inspection, an emergency exists," etc. This legislative construction we believe to be the correct one. Section 20 of the act has a bearing on the question. It provides, "that any person who shall assume to act as an inspector of grain who has not *first been so appointed and sworn,* shall be held to be an imposter, and liable to be fined." A legally appointed inspector, appointed and sworn, has the right to act. Obviously this means one appointed under the provisions of the law itself, and none other.

We are satisfied that the inspectors appointed by the board of trade of East St. Louis were not legally appointed, within the meaning of section 19 of the act of 1871, and that the power assumed by the board was without authority.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*